Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| PEDRO JOSÉ DE PEDRO MARTÍNEZ<br><br>Recurrido<br><br>V.<br><br>JOSÉ RAÚL DE PEDRO MARTÍNEZ; JOSÉ RAÚL DE PEDRO MONTES POR SI Y EN REPRESENTACIÓN DE SOCIEDAD LEGAL DE GANANCIALES JUNTO A MARLY MARTÍNEZ ANDINO, MARLY MARTÍNEZ DE ANDINO POR SI Y EN REPRESENTACIÓN SOCIEDAD LEGAL DE GANANCIALES JUNTO A JOSÉ DE RAÚL DE PEDRO MONTES, GUILLERMO JOSÉ DE PEDRO MONTES, ALMA ROSA DE PEDRO MONTE, PEDRO DE PEDRO GONZÁLEZ<br><br>Peticionarios | KLCE202401348 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br>Civil Núm.: BY2018CV02909<br><br>Sala: 501<br><br>Sobre:<br><br>Acción de Nulidad de Contrato |

Panel integrado por su presidenta, la jueza Ortiz Flores, la juez Brignoni Mártir, y el juez Candelaria Rosa

**Brignoni Mártir, Juez Ponente**

### RESOLUCIÓN

En San Juan, Puerto Rico, a 22 de enero de 2025.

Comparece ante nos, José Raúl de Pedro Martínez (en adelante, "el peticionario"). Su comparecencia es a los fines de solicitar nuestra intervención para que dejemos sin efecto la "*Orden*" emitida el 18 de octubre de 2024 y notificada el 21 de octubre de 2024, por el Tribunal de Primera Instancia, Sala Superior de Bayamón. Mediante la referida "*Orden*," dicho tribunal, ordenó al peticionario y al administrador actual que presentaran todas las facturas, recibos y resguardos que sustentaran sus informes trimestrales, dentro de un término de treinta (30) días. De igual modo, ordenó al antiguo albacea que notificara el informe final de su

albaceazgo de conformidad con lo dispuesto en el Artículo 588 del Código de Enjuiciamiento Civil de 1933, 32 LPRA sec. 2512. No obstante, determinó que, si éste entendía que había notificado el referido informe, así lo indicara y solicitara fecha para vista conforme a lo establecido en el Artículo 589 del Código de Enjuiciamiento Civil de 1933, 32 LPRA sec. 2513.

Por los fundamentos que expondremos a continuación, *denegamos* la expedición del recurso de epígrafe.

**I.**

Los hechos ante nuestra consideración tienen su génesis en la "*Segunda Demanda Enmendada*," presentada el 12 de julio de 2019, por Pedro José De Pedro Martínez (señor "Pedro José") y Rebecca de Pedro González ("señora Rebecca de Pedro"), (en lo sucesivo, en conjunto, "los recurridos"). En lo atinente, según relataron los recurridos, el peticionario y el señor Pedro José eran hijos de los causantes Diana Eva Martínez Contreras ("señora Martínez") y Raúl De Pedro Villamil ("señor De Pedro Villamil"). Expresaron, que los referidos causantes fallecieron testados: la señora Martínez instituyó a sus dos hijos herederos de las porciones de legítima estricta y mejora, mientras que el señor De Pedro Villamil les instituyó herederos universales.

A su vez, indicaron que la señora Martínez nombró albacea testamentario al peticionario, quien aceptó el cargo entre septiembre y octubre del año 2006. Posteriormente, según expusieron, el peticionario también fue nombrado albacea del caudal relicto del señor De Pedro Villamil. Ante ello, alegaron que el peticionario no había cumplido con los deberes del cargo de albacea. Entre los deberes incumplidos, incluyeron que no había presentado los informes trimestrales requeridos y que se había demorado en realizar los inventarios correspondientes. Por lo cual, sostuvieron que a la fecha no se había podido liquidar ni adjudicar los caudales relictos de las sucesiones en cuestión. En virtud de lo expuesto, entre otras cosas, solicitaron que se removiera al peticionario del cargo de

albacea y que se nombrara al señor Pedro José como albacea de los referidos causantes. Además, solicitaron que se ordenara la liquidación y adjudicación de los caudales relictos en controversia; y que se le ordenara al peticionario satisfacer la cantidad de $2,000,000.00 en concepto de daños y perjuicios.

En lo que nos concierne, el 5 de noviembre de 2019, el peticionario presentó "*Contestación a Segunda Demanda Enmendada*." En síntesis, aceptó que era albacea de los caudales relictos de la señora Martínez y el señor De Pedro Villamil. A su vez, contrario a lo aducido por los recurridos, sostuvo que había cumplido con sus obligaciones de albacea. Además, alegó que había mantenido informados al resto de los herederos de todos los asuntos relacionados a las sucesiones en cuestión. Finalmente, peticionó que se declara *No Ha Lugar* la "*Segunda Demanda Enmendada*;" solicitó también su desestimación; y la imposición a los recurridos de los gastos, costas y honorarios de abogado.

Así las cosas, el 18 de febrero de 2020, el foro recurrido celebró una "*Conferencia sobre el estado de los Procedimientos*," cuyos asuntos fueron recogidos en la "*Minuta*" notificada el 28 de febrero de 2020. Surge de dicha "*Minuta*" que el foro primario, entre otras cosas, ordenó al peticionario que entregara un informe de los activos del caudal relicto de la señora Martínez, desde la fecha de su deceso hasta la fecha de su rendición. Para la presentación de dicho informe, el referido tribunal concedió un término de treinta (30) días. Además, se hizo constar que el informe a rendir sería uno sobre el "estado de situación de los caudales relictos."

El 9 de octubre de 2020, el peticionario presentó una "*Moción Informativa*." Mediante esta, indicó que envió un "*Informe de Activos y Pasivos*" de los caudales relictos en controversia a los correos electrónicos de los representantes legales de las partes del caso. Posteriormente, el 8 de junio de 2021, el foro recurrido celebró una vista, la cual fue recogida en la "*Minuta*" notificada el 29 de junio de 2021. Mediante esta, entre otras cosas, ordenó lo siguiente:

> Se ordena a albacea de autos a entregar dentro de los próximos treinta días un informe de activos y pasivos tomado desde la fecha de la defunción de la causante, Diana Martínez Contreras, hasta el día de hoy. Lo mismo se realizará con la otra sucesión, pero serán informes separados. Si ya fue rendido deberán presentar un informe suplementario.

Ante ello, el 7 de junio de 2021, el peticionario presentó una "*Moción en Cumplimiento de Orden*." Mediante la cual, presentó documentación que intituló "los movimientos de activos y pasivos" de las cuentas de las sucesiones en controversia.[1]

Así pues, el 19 de octubre de 2021, el foro recurrido notificó "*Resolución y Sentencia Parcial Núm. 1*." Mediante esta, declaró la extinción del cargo de albacea que ocupaba el peticionario respecto a la sucesión de la señora Martínez. El referido tribunal estableció que tal extinción se había suscitado en la fecha del 9 de agosto de 2007. Además, determinó que el peticionario continuaría como administrador del caudal relicto de la señora Martínez hasta que sus herederos notificaran al tribunal la nueva persona que ocuparía el cargo de albacea, y se ordenara la transición del cargo.[2] Posteriormente, el 2 de febrero de 2023, el peticionario presentó renuncia para el cargo de albacea de la sucesión del señor De Pedro Villamil.

Así las cosas, el 2 de octubre de 2023, el foro recurrido notificó una "*Resolución.*" En lo atinente, dispuso lo siguiente: (a) que el peticionario quedaba relevado de sus funciones de albacea de las sucesiones en controversia; y (b) le ordenó al peticionario que en un término de treinta (30) días rindiera los informes finales de su albaceazgo, comenzara el proceso de transición con el nuevo administrador de las sucesiones, cesara el uso de los fondos de los caudales relictos para el pago de los honorarios

---

[1] En las fechas de 26 de abril de 2022; 6 de junio de 2022; 16 de agosto de 2022; 19 de junio de 2023; y 11 de junio de 2023, el peticionario presentó una serie de mociones al expediente judicial. A través de estas, informó de forma juramentada los movimientos de los activos y pasivos de los caudales relictos en cuestión hasta la fecha de 30 de junio de 2023.

[2] El 23 de febrero de 2022, este Tribunal modificó, bajo el caso KLAN202101024, la "*Resolución y Sentencia Parcial Núm. 1*" a los efectos de que los herederos de la señora Martínez notificaran el nombre de la persona a ejercer las labores de administrador de los bienes de la causante.

de sus abogados y rindiera cuentas de las cuantías utilizadas para esos fines. Además, declaró nuevo administrador al recurrido, señor Pedro José.

En respuesta, el 16 de noviembre de 2023, el peticionario presentó una "*Moción en Cumplimiento de Orden.*" A través de esta, únicamente indicó que había enviado los informes finales de su cargo de albacea a las partes del caso. Al día siguiente, el 17 de noviembre de 2023, el foro recurrido notificó una "*Resolución.*" Mediante esta, entre otras cosas, concedió al peticionario el pago de honorarios de abogado por los servicios provistos durante su cargo de albacea en actos de administración.

Tras los recurridos presentar reconsideración de la determinación del 17 de noviembre de 2023, el 10 de enero de 2024, el foro recurrido notificó una "*Resolución.*" Mediante esta, declaró *No Ha Lugar* la referida reconsideración. Consecuentemente, ordenó al nuevo administrador que satisficiera una factura pendiente de honorarios de abogado del 17 de agosto de 2023, y que se pagaran las facturas pendientes por honorarios de abogado incurridos durante la transición de la administración de las referidas sucesiones, sujeto a que ello fuera aprobado por la mayoría de los herederos.

Luego de varias incidencias procesales que no son necesarias de pormenorizar, el 2 de agosto de 2024, el peticionario presentó una "*Solicitud de Ejecución de Orden de Pago de Honorarios de Abogado.*" En síntesis, alegó que el 3 de junio de 2024, le había enviado una factura final de honorarios de abogado a todos los herederos de las sucesiones de la señora Martínez y el señor De Pedro Villamil, lo cual fue aprobado por la mayoría de ellos. Pese a esto, según adujo, el administrador de las sucesiones (el señor Pedro José) no había saldado las facturas pendientes. Por consiguiente, solicitó al foro recurrido que ordenase el pago de lo debido.

En reacción, el 13 de agosto de 2024, los recurridos presentaron "*Moción en Cumplimiento de Orden, Oposición a Pago de Honorarios y Solicitud de Resolución Respecto a Controversias por Resolver.*" En

esencia, sostuvieron que el peticionario había incumplido con lo ordenado sobre la rendición de cuentas. Además, alegaron que procedía auscultar qué honorarios cumplían con el requisito de ser actos de administración a favor de las sucesiones, durante el tiempo que el peticionario fue albacea y administrador de los caudales relictos en cuestión.

En atención de los escritos presentados, el 21 de agosto de 2024, el foro recurrido notificó una *"Orden."* Mediante esta, declaró *No Ha Lugar* la "*Solicitud de Ejecución de Orden de Pago de Honorarios de Abogado,*" por existir controversia sobre el monto adeudado. En consecuencia, ordenó que el peticionario presentara "las cuentas de las cuantías durante los términos que fungió como albacea o administrador judicial interino para las sucesiones de Diana Martínez Contreras y don Raúl de Pedro Villamil." A su vez, le requirió al peticionario que certificara que las facturas por servicios legales que habían sido satisfechas con el caudal relicto del señor De Pedro Villamil fueron utilizadas para actos de administración. Finalmente, el foro recurrido le concedió al peticionario un término de treinta (30) días para someter las facturas.

Posteriormente, el 17 de septiembre de 2024, el peticionario presentó "*Moción en Torno a Escrito al Expediente Judicial para Rendición de Cuentas al 30 de junio de 2024 (SUMAC 679), y Solicitud de Orden Para Producción de Facturas de Representación Legal y Objeción Preliminar Pendiente su Revisión.*" Mediante esta, peticionó al foro recurrido que ordenara al señor Pedro José, que entregara a todos los herederos las facturas de servicios legales que han sido cubiertas con los fondos de las sucesiones durante su periodo como administrador de estas.

En respuesta, el 4 de octubre de 2024, los recurridos presentaron "*Oposición a Moción (SUMAC 713) Presentada por el Codemandado José Raúl Pedro Martínez.*" En síntesis, se opusieron a la solicitud de facturas instada por el peticionario, bajo el argumento de que el referido peticionario no había agotado los mecanismos que provee el descubrimiento de prueba para descubrir lo solicitado. Además, sostuvieron que el peticionario aun

no había producido las facturas requeridas, junto a la certificación de lo pagado en concepto de honorarios de abogado con fondo de las sucesiones. De otra parte, alegaron que existía una distinción entre presentar informes finales de albaceazgo y rendir cuentas finales, lo cual conllevaba descubrimiento de prueba y la celebración de una vista evidenciaría. Cónsono con lo anterior, aseveraron que el peticionario únicamente se había limitado a rendir informes trimestrales, a pesar de que intituló su último informe como uno final. De igual modo, arguyeron que su posición siempre había sido de impugnar los informes rendidos por el peticionario durante su albaceazgo. Ello, dado que, entre otras cosas, había realizado pagos de servicios contrarios al interés de las sucesiones en cuestión. Por lo cual, solicitaron que se le ordenara al peticionario presentar una cuenta final.

En atención de las solicitudes presentadas, el 21 de octubre de 2024, el foro recurrido notificó una "*Orden.*" Mediante esta, ordenó al peticionario y al administrador actual que presentaran todas las facturas, recibos y resguardos que sustentaran sus informes trimestrales, dentro de un término de treinta (30) días. De igual modo, ordeno al antiguo albacea que notificara el informe final de su albaceazgo de conformidad con lo dispuesto en el Artículo 588 del Código de Enjuiciamiento Civil de 1933, 32 LPRA sec. 2512. No obstante, determinó que, si éste entendía que había notificado el referido informe, así lo indicara y solicitara fecha para vista conforme a lo establecido en el Artículo 589 del Código de Enjuiciamiento Civil de 1933, 32 LPRA sec. 2513.

En desacuerdo, oportunamente el 6 de noviembre de 2024, el peticionario presentó "*Moción de Reconsideración Re: SUMAC 725,*" la cual fue declarada *No Ha Lugar* el 13 de noviembre de 2024. Aun en desacuerdo, el 13 de diciembre de 2024, el peticionario presentó ante nos un recurso de *certiorari*. Mediante este, esbozó el siguiente señalamiento de error:

Erró el TPI al no reconocer como suficiente el informe final juramentado y con anejos presentado por el compareciente, ordenarle la presentación de recibos o documentos adicionales a los presentados y la celebración de vista para aprobar las cuentas del albacea aunque se le presentaron directamente a los herederos, quienes siendo todos mayores de edad no objetaron los mismos en tiempo y, lo que objetaron los demandantes recurridos, ya fue previa y finalmente determinado improcedente por el TPI (por voz de otra Juez [sic]) y este Honorable Tribunal.

**II.**

El *certiorari* es un recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar a su discreción una decisión de un tribunal inferior. *Rivera et al. v. Arcos Dorados et al.,* 212 DPR 194, 207 (2023); *Orthopedics Prod. Of Puerto Rico, LLC v. Medshape, Inc.*, 207 DPR 994, 1004 (2021); Art. 670 del Código de Enjuiciamiento Civil de 1933, conocido como Ley de Recursos Extraordinarios, 32 LPRA sec. 3491. La característica distintiva del *certiorari* "se asienta en la discreción encomendada al tribunal revisor para autorizar su expedición y adjudicar sus méritos". Íd. Ahora bien, el ejercicio de esta discreción no es absoluto. Por ello, la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, establece una serie de instancias en las que los foros apelativos pueden ejercer su facultad revisora:

El recurso de certiorari para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia.

De igual modo, la Regla 40 del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, delimita los criterios para la expedición de un auto de *certiorari*. Así pues, estas consideraciones "orientan la función del tribunal apelativo intermedio para ejercer sabiamente su facultad discrecional". *Rivera Gómez v. Arcos Dorados Puerto Rico*, supra. La aludida regla permite que el análisis del foro apelativo intermedio no se efectúe en el vacío ni se

aparte de otros parámetros al momento de considerar los asuntos planteados. Íd.; *Torres González v. Zaragoza Meléndez*, 211 DPR 821, 848 (2023); *800 Ponce de León v. American International*, 205 DPR 163, 176 (2020). De conformidad con lo anterior, la Regla 40, *supra,* dispone los siguientes criterios:

**A.**   Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

**B.**   Si la situación de hechos planteada es la más indicada para el análisis del problema.

**C.**   Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

**D.**   Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

**E.**   Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

**F.**   Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

**G**.   Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia. 4 LPRA Ap. XXII-B.

Los foros revisores no debemos intervenir en las determinaciones de hechos del tribunal de instancia, "salvo que se pruebe que dicho foro actuó con prejuicio o parcialidad o incurrió en craso abuso de discreción o en error manifiesto. *Citibank v. ACBI,* 200 DPR 724, 736 (2018). Esta norma permite que el foro primario actúe conforme a su discreción judicial, que es la facultad que tiene "para resolver de una forma u otra, o de escoger entre varios cursos de acción". Id. pág. 735; *Graciani Rodríguez v. Garage Isla Verde, LLC*, 202 DPR 117, 132 (2019). El ejercicio esta discreción "está inexorable e indefectiblemente atado al concepto de la razonabilidad". Id.; *Pueblo v. Hernández Villanueva*, 179 DPR 872, 890 (2010). Así pues, "la discreción es una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera". Id.; *Medina Nazario v. McNeil Healthcare LLC*, 194 DPR 723, 729 (2016). No obstante, un tribunal incurre en abuso de discreción cuando ignora sin fundamento un hecho material, concede demasiado peso a un hecho inmaterial, y fundamenta su

determinación en ese hecho irrelevante, o cuando a pesar de examinar todos los hechos del caso hace un análisis liviano y la determinación resulta irrazonable. *Id*, pág. 736. En esos casos, los foros apelativos ostentamos la facultad discrecional para expedir el recurso de *certiorari* y ejercer nuestra función revisora.

### III.

Al evaluar los requisitos establecidos para ejercer nuestra facultad discrecional con mensura, concluimos que el presente caso no reúne los criterios necesarios para intervenir en sus méritos. La decisión recurrida no es contraria a derecho ni está cimentada en una apreciación prejuiciada, parcializada o de error craso y manifiesto. Por lo cual, al amparo de las disposiciones de la Regla 40, *supra, denegamos* la expedición del presente recurso.

### IV.

Por los fundamentos expuestos, denegamos la expedición del auto de *certiorari*, presentado por el peticionario.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones